**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **STUDENTS 4 MENTAL HEALTH JUSTICE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE PRESIDENT AND FELLOWS OF HARVARD COLLEGE a/k/a the Harvard Corporation d/b/a Harvard University,**<br><br>**Defendant.** | **Civil Action No.**<br>**25-11452-FDS** |

**MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION**
**FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**

**SAYLOR, J.**

This is a lawsuit brought by a student advocacy group against Harvard College, alleging that the college's treatment of students with mental-health issues violates various federal and state laws. The present dispute concerns plaintiff's motion for leave to file a second amended complaint.

## I. Background

The original complaint was filed on May 22, 2025, by a group called Students 4 Mental Health Justice ("S4MHJ"). It alleged violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182, *et seq.* (Count 1); Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794(a), *et seq*. (Count 2); the Massachusetts Equal Rights Act, ("MERA"), Mass. Gen. Laws ch. 93 § 103, *et seq.* (Count 3); and the Fair Housing Act ("FHA"),

42 U.S.C. § 3601 *et seq.* (Count 4). It sought injunctive and declaratory relief and attorneys' fees, but not money damages.

The complaint asserted only organizational claims, not claims by any individual plaintiffs. However, the allegations in the complaint concerned the experiences of five Harvard College students, and raised issues concerning how Harvard handled (1) leaves of absence following a hospitalization; (2) requests to return to school; (3) access to campus and on-campus housing; and (4) conditions upon which the student could return following a hospitalization. The five students, identified in the complaint only as "Students A-E," reported different personal experiences as to those matters.

On October 27, 2025, Harvard moved to dismiss or for a more definite statement. In response, on November 14, 2025, S4MHJ filed a First Amended Complaint ("FAC"). The FAC again was brought only on behalf of S4MHJ, asserted the same claims, and sought the same types of relief. Harvard answered the FAC on December 22, 2025.[1]

On May 29, 2026, S4MHJ filed a Motion for Leave to File Second Amended Complaint. The SAC proposes to add new claims of three individual plaintiffs: "Student C" (a former Harvard College student); "Jane Doe" (a current Harvard graduate student); and "Mary Roe" (a current Harvard College student). All three plaintiffs seek money damages. Two also seek declaratory and injunctive relief.

Most significantly, Jane Doe and Mary Roe seek to represent a class of current, former, and "similarly situated" students across all Harvard undergraduate and graduate schools. The

[1] A Scheduling Conference was held on January 16, 2026, at which S4MHJ requested that the deadline to amend its complaint be extended until after Harvard's Commencement in order to "address the possible issue of students graduating at the end of the school year." *See* Dkt. No. 55-1 ¶ 2. The Court agreed, and set a May 29, 2026 deadline for amended pleadings and set a February 1, 2027 deadline for dispositive motions. Thereafter, the parties began discovery.

putative class is defined as "all Harvard students with actual or perceived mental health disabilities who are currently or will be subject to Harvard's policies, practices, and procedures related to student mental health crises." Second Amended Complaint ("SAC") ¶ 167.

Harvard opposes the motion for leave to amend on the ground of futility, undue delay, and unfair prejudice. For the following reasons, the motion will be granted in part and denied in part.

## II. Legal Standard

In general, courts "freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a motion to amend may be denied where there is "undue delay in filing the motion, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, [or] futility of amendment." *U.S. ex rel. Gagne v. City of Worcester*, 565 F.3d 40, 48 (1st Cir. 2009) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A district court evaluating a motion for leave to amend a complaint "must consider the totality of the circumstance[s]." *Nikitine v. Wilmington Tr. Co.*, 715 F.3d 388, 390 (1st Cir. 2013).

## III. Analysis

### A. Class Allegations

Without question, the proposed amendment would be futile to the extent that it seeks to add class allegations and requests classwide relief. As noted, the proposed class consists of "all Harvard students with actual or perceived mental health disabilities who are currently or will be subject to Harvard's policies, practices, and procedures related to student mental health crises." (SAC ¶ 167). As defendant notes:

> It is difficult to imagine a set of circumstances less conducive to class litigation than those Plaintiff puts at issue here. The class, as conceived by Plaintiff, would encompass individuals with wildly diverse alleged experiences, claims, and damages. For example, the proposed class would be comprised of: current and

> former students across all thirteen Harvard schools with a range of purported disabilities or perceived disabilities (each of which must be established under the relevant statutory definitions), who may—or may not—have experienced a different set of the range of Harvard actions about which Plaintiff complains (*e.g.*, some took voluntary leave, some involuntary, and some no leave at all), and who have different relevant facts and alleged damages due to the nature of: their condition (if any); their Harvard school requirements; the nature of their mental health crisis (if any); the impact on others in the community; whether they returned to Harvard and if so the conditions (if any) upon which they returned; the opinions of their care providers (if any); and the impact (if any) of their experiences on their curriculum or academic trajectory—among many other factors.

(Def. Mem. at 9-10).

The Court agrees. The proposed class definition is overbroad in the extreme, covering a wide range of students in different circumstances, with different conditions, with different courses of treatment, over an extended (indeed unbounded) period of time, who presumably were treated differently by Harvard in a variety of different contexts. Furthermore, it employs terms that are ambiguous and incapable of precise definition, such as "actual or perceived mental health disabilities" or "student mental health crises."

At the very least, there is no realistic prospect that plaintiffs could satisfy the commonality requirement of Fed. R. Civ. P. 23(a)(2). *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). In *Parent/Professional Advocacy League v. City of Springfield*, 934 F.3d 13, 17-18 (1st Cir. 2019), a putative class of "all [current and former] students with a mental health disability" that were enrolled in a public school brought an ADA claim alleging that the school maintained discriminatory policies that relegated students with mental-health disabilities to a separate and inferior alternative-school program. The First Circuit affirmed denial of class certification, holding that plaintiffs had failed to identify "a uniformly applied, official policy of the school district, or an unofficial yet well-defined practice, that drives the alleged violation." *Id.* at 29. Because the suit challenged "hundreds of individualized decisions," plaintiffs were

required to show a "common mode of exercising discretion." *Id.* (quoting *Wal-Mart*, 564 U.S. at 356). The court emphasized that resolution of the claim required "individualized determinations which defeat[ed] commonality," as it "must be answered separately for each child based on individualized questions of fact and law, and the answers are unique to each child's particular situation." *Id.* at 31 (quoting *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 498 (7th Cir. 2012)); *see also Burkett v. U.S. Postal Service*, 175 F.R.D. 220, 224 (N.D. W. Va. 1997) (holding that a putative class action based on a "perceived disability theory" was inappropriate for class adjudication).

That infirmity applies not only to proposed Counts 1 and 2 (which assert claims under the ADA and Section 504 of the Rehabilitation Act), but to Counts 3 and 4 (which assert claims under the Massachusetts Equal Rights Act and the Fair Housing Act). All four claims require individualized determinations across a broad variety of issues, precluding classwide adjudication and relief.

**B. <u>Individual Allegations</u>**

The addition of the individual claims presents a different set of issues. There are, of course, some obvious similarities between the claims of S4MHJ and those of the three proposed individual plaintiffs. At a general level, all challenge the policies of Harvard concerning mental-health issues.[2] But there are also substantial differences between the various claims.

Each of the three students had her own individual mental-health issues, her own course of diagnosis and treatment, and her own experiences as to Harvard's response, whether in terms of academic issues, housing issues, or otherwise. And the differences go beyond merely individual

[2] For present purposes only, the Court will assume that Harvard's policies and practices were the same at both the undergraduate college and the graduate school attended by Jane Doe.

histories. All three individuals seek money damages, which entitles them to a jury trial; two of them, but not Student C, also seek equitable relief. One of the three (Mary Roe) has a potential issue as to the statute of limitations. One of the three (Jane Doe) lived off-campus, and therefore has no housing-related claims against Harvard. And Student C is differently situated because her claims are already part of the case as a factual matter, although she has not asserted any legal claims up to this point.

Again, the question before the Court is not whether those claims are meritorious, but whether the addition of the claims of those three plaintiffs should be precluded on the basis of undue delay, futility, or unfair prejudice.

As to undue delay, the motion seeking leave to amend was filed within the court-ordered deadline for such motions, and while the time period for conducting discovery was still open. It is certainly true that Local Rule 15.1(a) requires that "[a]mendments adding parties should be sought as soon as an attorney reasonably can be expected to have become aware of the identity of the proposed new party," and there is nothing in the record to indicate when counsel became aware of the identities of Jane Doe and Mary Roe. Student C has been part of the case from the beginning, although not as a named plaintiff. Nonetheless, under the circumstances, the Court is not prepared to deny the motion on that basis.

At least one set of proposed claims should clearly be denied on the basis of futility. According to the proposed amended complaint, Jane Doe resided at all relevant times in an off-campus private apartment, and therefore her housing-based claims against Harvard under MERA and FHA are without a valid basis. Harvard contends that the claims of Mary Roe are time-barred, but as pleaded it is at least plausible that some portion of her claims fall within the limitations period.

The legal and practical questions raised by the other distinctions appear to raise issues of improper joinder under Rule 20 rather than futility for failure to state a claim upon which relief can be granted. While it is certainly possible that some or all of the claims may need to be severed at some point in the future, that issue has not been briefed, the Court will not deny amendment on that basis.

Finally, as to unfair prejudice, there is no question that the addition of three new plaintiffs with three sets of individualized claims will add to the burden of defending the lawsuit, and at a relatively advanced stage in the discovery process. However, the prejudice arising from that can be substantially mitigated by providing Harvard a fair opportunity to obtain complete discovery from Jane Doe and Mary Roe, and additional discovery, if any is required, as to Student C.

In short, the motion for leave to amend will be granted to the extent it seeks to add individual claims as to the three new individual plaintiffs, other than the housing-related claims of Jane Doe, and will be otherwise denied. A schedule for the taking of additional discovery as to those individuals will be set at a future court conference.

## IV. **Conclusion**

For the foregoing reasons, Plaintiff's Motion for Leave to File a Second Amended Complaint (Dkt. No. 55) is GRANTED as to Counts 1 and 2 of the individual claims of Jane Doe; GRANTED as to all counts of the individual claims of Mary Roe and Student C; and otherwise DENIED. Plaintiffs shall file a revised Second Amended Complaint that is consistent with the terms of this memorandum and order no later than September 18, 2026. That complaint shall be deemed effective for purposes of an answer or other response as of the date of that filing. The clerk is directed to set this matter for a further conference at the earliest convenient date.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge

Dated: September 8, 2026